1

2

3

4            **UNITED STATES DISTRICT COURT**

5               **DISTRICT OF NEVADA**

6    JUAN ULLOA,

7        Plaintiff,                                    Case No. 3:21-cv-00495-RCJ-CSD

8    v.                                                        **ORDER**

9    NEVADA GOLD MINES, LLC,

10       Defendant.

11

12        Plaintiff Juan Ulloa started working for Barrick Goldstrike Mines Inc., predecessor to

13   Defendant Nevada Gold Mines, LLC ("NGM") in 2006.  He alleges he was injured on the job in

14   June 2019, was cleared to return to work on October 2, 2019, was immediately suspended and then

15   terminated on October 16, 2019.  Ulloa brings the instant action, alleging state and federal claims

16   for disability discrimination, a state claim for retaliatory discharge, and state and federal claims for

17   failure to accommodate a disability in his First Amended Complaint (ECF No. 25).  NGM moves to

18   dismiss (ECF No. 17), which Ulloa opposes (ECF No. 32).  Having read and considered the

19   pleadings and arguments of the parties, the Court will grant the motion in part and deny it in part as

20   detailed below.[1]

21

22   ---

     [1]     Two additional motions are before the Court that are quickly resolved.  First, NGM filed a
23   motion to dismiss (ECF No. 8) Ulloa's original complaint.  That motion became moot when Ulloa
     filed his First Amended Complaint and will be dismissed as such.

24        Second, Ulloa moved for an extension of time to file his opposition (ECF No. 22).  NGM
     filed a partial non-opposition (ECF No. 31), indicating that it agreed that Ulloa could file an

## I.   PROCEDURAL HISTORY

Ulloa filed his complaint initiating this action on December 2, 2021.  (ECF No. 1).  NGM moved to dismiss the original complaint.  (ECF No. 8).  Ulloa responded by filing a First Amended Complaint (ECF No. 25).[2]  NGM then filed the instant motion to dismiss the First Amended Complaint (ECF No. 17).

## II.   BACKGROUND[3]

Ulloa began working for Barrick Goldstrike Mines, predecessor to NGM, in 2006.  On June 4, 2019, he was injured in an industrial accident.  Ulloa did not think that he had suffered an injury that he would be required to report.  However, the pain became worse and Ulloa reported the injury to NGM and filed a worker's compensation claim on June 6, 2019.

Ulloa was off work under doctor's orders until October 2, 2019.  During this time, he was not offered the accommodation of light duty work.

NGM is aware of the results of all doctor's appointments of its employees who have worker's compensation claims.

Ulloa requested an accommodation (including being assigned a different job or a restriction on not lifting more than 20 pounds) but was denied.

On October 2, 2019, Ulloa's doctor released him to return to full-duty work relative to his industrial injury.  The release ultimately proved to be incorrect.

---

opposition not later than May 11, 2022.  As Ulloa filed his opposition on May 11, 2022, the Court will grant the motion for extension and consider the opposition as timely.

[2]    The First Amended Complaint, as docketed at ECF No. 25, has been redacted to remove personal identifiers.  An unredacted copy of the First Amended Complaint is docketed under seal at ECF No. 10.

[3]    As this matter is before the Court on NGM's motion to dismiss the First Amended Complaint, the following background summarizes Ulloa's factual allegations, which the Court accepts as true for purposes of the motion.

1    Ulloa had an unrepaired herniated disk.

2    Ulloa successfully worked in his position for NGM for years and had the training and

3  experience to perform the essential functions of the job.  He was also qualified for other jobs that

4  NGM had available.

5    Ulloa is substantially limited in major life activities including walking, standing, sleeping,

6  and doing chores around the house.

7    Within 20 minutes of his doctor's appointment on October 2, 2019, NGM's Human

8  Resources representative had been informed of the doctor's release of Ulloa to return to work.  The

9  representative called Ulloa as he was driving back from Reno, and informed Ulloa that he was

10  suspended and was being investigated regarding his reporting of the June 4, accident and injury.  On

11  October 16, 2019, NGM terminated Ulloa's employment, stating that it was doing so because of his

12  report of the workplace injury on June 6, 2019.

13    Ulloa filed an intake inquiry form with the Nevada Equal Rights Commission ("NERC").

14  The formal EEOC Form 5, prepared by NERC, was submitted on October 15, 2020.  The EEOC

15  issued its Right to Sue letter on September 17, 2021, and the NERC issued is Right to Sue letter on

16  September 13, 2021.

17  **III. LEGAL STANDARDS**

18    The defendant's motion to dismiss, brought pursuant to Fed. R. Civ. P. 12(b)(6), challenges

19  whether the plaintiff's complaint states "a claim upon which relief can be granted."  In ruling upon

20  this motion, the court is governed by the relaxed requirement of Rule 8(a)(2) that the complaint need

21  contain only "a short and plain statement of the claim showing that the pleader is entitled to relief."

22  As summarized by the Supreme Court, a plaintiff must allege sufficient factual matter, accepted as

23  true, "to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550

24  U.S. 544, 570 (2007), *Landers v. Quality Communications, Inc.*, 771 F.3d 638, 641 (9th Cir. 2015).

1  Nevertheless, while a complaint "does not need detailed factual allegations, a plaintiff's obligation

2  to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions,

3  and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at

4  555, *Landers*, 771 F.3d at 642.  In deciding whether the factual allegations state a claim, the court

5  accepts those allegations as true, as "Rule 12(b)(6) does not countenance . . . dismissals based on a

6  judge's disbelief of a complaint's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 327

7  (1989).  Further, the court "construe[s] the pleadings in the light most favorable to the nonmoving

8  party." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007).

9  However, bare, conclusory allegations, including legal allegations couched as factual, are not

10  entitled to be assumed to be true. *Twombly*, 550 U.S. at 555, *Landers*, 771 F.3d at 641.  "[T]he tenet

11  that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

12  conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "While legal conclusions can provide

13  the framework of a complaint, they must be supported by factual allegations." *Id*. at 679.  Thus, this

14  court considers the conclusory statements in a complaint pursuant to their factual context.

15  To be plausible on its face, a claim must be more than merely possible or conceivable.

16  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

17  misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to

18  relief.'"  *Id*. (citing Fed. R. Civ. P. 8(a)(2)).  Rather, the factual allegations must push the claim

19  "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  Thus, allegations that

20  are consistent with a claim, but that are more likely explained by lawful behavior, do not plausibly

21  establish a claim. *Id*. at 567.

22  Normally when ruling on a Rule 12(b)(6) motion to dismiss, consideration of evidence

23  outside the pleadings requires that the motion be converted into a Rule 56 motion for summary

24  judgment.  *See* Fed. R. Civ. Pro. 12(d).  "A court may, however, consider certain materials—

4

1   documents attached to the complaint, documents incorporated by reference in the complaint, or

2   matters of judicial notice—without converting the motion to dismiss into a motion for summary

3   judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  A document that is not

4   attached to a complaint "may be incorporated by reference into a complaint if the plaintiff refers

5   extensively to the document or the document forms the basis of the plaintiff's claim." *Id.*

6          To establish a claim of disability discrimination, a plaintiff must show that "(1) he is disabled

7   within the meaning of the ADA, (ii) he is a qualified individual capable of performing the essential

8   functions of the job with a reasonable accommodation, and (3) he suffered an adverse employment

9   action because of his disability." *Allen v. Pac. Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003).  The

10  discharge of an employee because of disability would be an act of prohibited discrimination.  42

11  U.S.C. § 12112(a).  The prohibition on discrimination on the basis of disability also extends to "not

12  making reasonable accommodations to the known physical or mental limitations of an otherwise

13  qualified individual with a disability who is an applicant or employee, unless [the employer] can

14  demonstrate that the accommodation would impose an undue hardship . . .."   42 U.S.C.

15  § 12112(b)(5)(A).

16         Section 12102(2)(A) defines disability as "a physical or mental impairment that substantially

17  limits one or more of the major life activities of the individual."   The regulations identify three

18  factors to be considered in determining whether a person is "substantially limited:" "(i) The nature

19  and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii)

20  The permanent or long term impact, or the expected permanent or long term impact of or resulting

21  from the impairment."   29 C.F.R. § 1630.2(j)(2).   "The appendix to the regulations states,

22  'temporary, non-chronic impairments of short duration, with little or no long term or permanent

23  impact, are usually not disabilities.  Such impairments may include, but are not limited to, broken

24

1    limbs, sprained joints, concussions, appendicitis, and influenza.'"  *Sanders v. Arneson Products,*

2    *Inc.*, 91 F.3d 1351, 1354 (9th Cir. 1996) (quoting 29 C.F.R. Part 1630 App., § 1630.2(j)).

3    　　　When an employer is notified of a need for an accommodation, the employer has "a duty to

4    engage in an 'interactive process' through which the employer and employee can come to understand

5    the employee's abilities and limitations, the employer's needs for various positions, and a possible

6    middle ground for accommodating the employee."  *Snapp v. United Transportation Union*, 889 F.3d

7    1088, 1095 (9th Cir. 2018).  However, "there exists no stand-alone claim for failing to engage in the

8    interactive process.  Rather, discrimination results from denying an available and reasonable

9    accommodation."  *Id.*  Nevertheless, an employer's failure to engage in the interactive process will

10   shift the burden regarding the availability of a reasonable accommodation to the employer.  *Id.*

11   　　　Nevada's discrimination statute is similar to a federal discrimination statute, so Nevada's

12   courts have looked to the decisions of federal courts for guidance.  *Pope v. Motel 6*, 121 Nev. 307,

13   311 (2005).  Accordingly, for purposes of the present motion, the Court will consider the sufficiency

14   of Ulloa's state disability discrimination claims pursuant to the same standards as his federal claims.

15   　　　"As a matter of strong public policy, [Nevada] recognizes that 'retaliatory discharge by an

16   employer stemming from the filing of a work[er's] compensation claim by an injured employee is

17   actionable in tort.'"  *MGM Grand Hotel-Reno, Inc. v. Insley*, 102 Nev. 513, 519 (1986) (quoting

18   *Hansen v. Harrah's*, 100 Nev. 60, 64 (1984)).

19   　　　"When there is mere temporal proximity between an employer's knowledge of protected

20   activity and an adverse employment action as sufficient evidence of causality, the temporal

21   proximity must be very close.  Courts have held that a three-month period and a four-month period

22   were too far apart in temporal proximity to support a claim for tortious discharge."  *Hardy v. Chromy*,

23   126 Nev. 718 (2010) (table) (quotations and citations omitted).

24

## IV. DISCUSSION

### A.  Consideration of Additional Documents

In ruling on NGM's motion to dismiss, the Court will consider Ulloa's Discrimination Intake Form.  The Court's consideration of this document will not transform NGM's Rule 12(b)(6) motion into a Rule 56 summary judgment motion because Ulloa attached it as an exhibit to his complaint.

The Court, however, excludes Exhibits 2 and 3 to NGM's motion from consideration in deciding the motion.  Ulloa did not attach either document to his complaint.  Further, Ulloa did not incorporate either document by reference into his complaint.  He did not refer to either document extensively in his complaint.  Further, neither of the documents form the basis of any of his claims.  Accordingly, neither document is appropriately before the Court on NGM's Rule 12(b)(6) motion to dismiss.

### B.  Disability Discrimination Claims

In considering the sufficiency of Ulloa's disability discrimination claims, the Court notes that the ADA does not prohibit discrimination of all physical impairments, but only those impairments that qualify as disabilities.  Further, and critical to Ulloa's claims, the ADA does not prohibit adverse actions against a person who has a disability, but adverse actions against a person *because of* the disability.

Ulloa has sufficiently alleged facts raising a plausible inference that he had a disability; specifically, a herniated disk in his spine that limited him in the major life activities of walking, standing, and doing chores around the house.

Ulloa has alleged NGM terminated him on October 16, 2019, which qualifies as an adverse employment action under the ADA.

Ulloa has alleged that, in response to Ulloa's request for a different job or a restriction on lifting no more than 20 pounds, NGM told him that he would not be accommodated.  For purposes

of this motion, the Court assumes that NGM's decision to not provide any accommodation to Ulloa qualifies as an adverse employment action.[4]

Ulloa has not, however, alleged facts raising a plausible inference that NGM either terminated him because of his disability or failed to accommodate his disability.  The defect in the First Amended Complaint is the lack of any allegation raising a plausible inference that NGM knew Ulloa was disabled.  Without dispute, Ulloa has alleged facts raising a plausible inference that NGM knew Ulloa had a physical impairment.  Specifically, Ulloa alleges that his lower back was *injured* on June 4, 2019.  He further alleges that, at the time of the injury, he "did not think that he had suffered an actual injury."  As such, Ulloa did not inform NGM of the injury on the date of the accident.  Rather, he informed NGM of the lower back injury on June 6, 2019, and did so because the pain had become worse.

Ulloa's allegations that he notified NGM that he had suffered a lower back injury raises an inference that NGM was aware that Ulloa was physically impaired.  Those allegations do not, however, raise an inference that NGM was aware that the physical impairment was a disability (as defined by the ADA).  Ulloa's allegation that he has a herniated disk in his spine does not meet this burden.  While the allegation raises a plausible inference that Ulloa is disabled, it does not raise a plausible inference that NGM knew that Ulloa had a herniated disk.

Ulloa's allegations regarding the notice he gave NGM on June 6, 2019, that he had a lower back injury do not raise the inference that NGM knew that Ulloa's lower back injury was a disability. As to severity, Ulloa alleges only that the pain had become sufficiently severe as to cause him to decide he needed to report the injury.  Ulloa has not alleged any facts regarding either his or NGM's

---

[4]    The Court notes that Ulloa cannot maintain an accommodation claim on the basis that NGM did not participate in the interactive process.  While NGM would have a duty to do so, the breach of that duty does not create a separate cause of action.  Rather, Ulloa can only maintain a claim for failure to provide a reasonable accommodation.

1  knowledge of the expected duration or the permanent or long-term impact of the injury. The absence

2  of allegations concerning the expected duration and impact of Ulloa's injury preclude the inference

3  that either Ulloa or NGM knew, on June 6, 2019, that Ulloa's injury constituted a disability under

4  the ADA. Accordingly, the Court finds that Ulloa's allegations permit, at most, a plausible inference

5  that, as of June 6, 2019, NGM was aware that Ulloa was suffering from a temporary, non-chronic

6  low back injury with little or no long term or permanent impact; that is, that NGM knew that Ulloa

7  had a physical impairment that did not qualify as a disability.

8       Ulloa asserts NGM was aware of his disabilities because the doctor's office would report the

9  results of doctor's appointments directly to NGM or because NGM's representatives would attend

10  doctor's visits. Ulloa's allegation that NGM is aware of the results of his medical appointments is

11  an allegation of fact which the Court treats as true and accurate. However, the allegation shows only

12  that NGM was aware of the *results* of the doctor's appointments. Ulloa's assertion that NGM had

13  knowledge of his disabilities because it knew of the results of the appointments is a conclusion that

14  the Court must consider in its factual context. Ulloa has not, however, provided any factual context

15  to support his conclusion. Ulloa has not alleged that any result of a doctor's appointment prior to

16  October 16, 2019, disclosed that he had a herniated disk. Ulloa has not alleged that the results of his

17  doctor's appointments disclosed the severity, expected duration, and expected long term or

18  permanent impact of his physical impairment. As a result, Ulloa has not alleged facts raising a

19  plausible inference that NGM learned of his disability because it had access to the results of his

20  doctor's appointments.

21       The only remaining allegation within the First Amended Complaint relevant to NGM's

22  knowledge of Ulloa's impairment is that, on October 2, 2019, a representative of NGM contacted

23  Ulloa within 20 minutes of a doctor releasing Ulloa to full duty work. Taken at face value, the

24  allegation raises the inference that NGM was aware of the result of the October 2, 2019, doctor's

9

1  appointment.  The only allegation of fact regarding that result, however, is that Ulloa was cleared to

2  return to full duty work regarding his June 4, 2019, injury.  The only plausible inference raised from

3  this fact is that the June 4, 2019, injury was a temporary impairment, not a disability.

4         Ulloa alleges that the doctor's release was "ultimately" shown to be erroneous and incorrect.

5  Accepting the allegation as true, it is relevant only if the NGM was aware the doctor's release was

6  erroneous and incorrect.  However, Ulloa has not alleged any facts suggesting when, or even if,

7  NGM became aware that the doctor's release was erroneous.  More particularly, Ulloa has not

8  alleged any facts suggesting NGM gained such knowledge prior to terminating him.  The allegations

9  of Ulloa's First Amended Complaint permit only the inference that, as of October 2, 2019, NGM

10  was informed that Ulloa no longer suffered an impairment precluding him from full-duty work.

11         Accordingly, the Court finds that Ulloa has failed to allege facts raising a plausible inference

12  that NGM was aware that Ulloa was disabled either (a) when it terminated him, or (b) when it denied

13  Ulloa's request for a different job or a restriction on not lifting more than 20 pounds.  Accordingly,

14  NGM is entitled to dismissal of each of Ulloa's four disability discrimination claims.

15  **C. Retaliatory Discharge in Violation of Public Policy**

16         NGM argues that the four-and-one-half month gap between Ulloa's worker's compensation

17  claim on June 6, 2019, and his discharge on October 16, 2019, negates a circumstantial inference

18  that the discharge was in retaliation for the protected activity of filing a worker's compensation

19  claim.  The Court disagrees.

20         Generally, NGM is correct that close temporal proximity is required when temporal

21  proximity is the only fact supporting the inference of causality.  Further, other courts have held,

22  under various circumstances, that periods as short as two months, three months, or four months are

23  sufficiently long to preclude an inference of causality.

24

10

1    However, Ulloa's retaliatory discharge claim does not rest solely on his allegations that he

2  filed a worker's compensation claim on June 6, 2019, and that NGM terminated him on October 16,

3  2019.  Rather, Ulloa also alleges that (a) on June 6, 2019, he reported the accident that occurred on

4  June 4, 2019; (b) on October 2, 2019, NGM informed him that it was suspending him pending an

5  investigation of his June 6, 2019, report of the accident, and (c) NGM terminated him on October

6  16, 2019, stating, as its reason for the termination, that the June 6, 2019, report of the accident was

7  two days after the injury had occurred.   In its opposition, NGM expressly argues that Ulloa pled

8  that NGM had a legitimate non-discriminatory reason for terminating Ulloa on October 16, 2019:

9  Ulloa's report of the injury on June 6, 2019, was two days after the injury occurred.  That is, NGM,

10  itself, argues that it terminated Ulloa for an action he took on June 6, 2019.  As Ulloa alleges that he

11  filed a worker's compensation claim on June 6, he has alleged facts raising a plausible inference that

12  he was discharged in retaliation for filing a worker's compensation claim.

13    NGM argues that Ulloa has not alleged facts showing that NGM's stated reason for

14  terminating him is pretextual.  Ulloa does not, however, have any such burden.  Ulloa need only

15  allege facts raising a plausible inference that his termination on October 16, 2019, was in retaliation

16  for filing a worker's compensation claim on June 6, 2019.   Ulloa's allegation that NGM

17  acknowledged terminating him for an action taken on June 6, 2019, (and NGM's arguments to this

18  Court that it terminated Ulloa for an action taken on June 6, 2019), and Ulloa's allegation that he

19  filed a worker's compensation claim on June 6, 2019, is sufficient to raise a plausible inference that

20  NGM terminated Ulloa on October 16, 2019, in retaliation for filing a worker's compensation claim

21  on June 6, 2019.

22    NGM further argues that, even if this is a "mixed motive" case (i.e., that NGM discharged

23  Ulloa both because of the late-report of the accident and for filing a worker's compensation claim),

24  it is entitled to dismissal.  NGM's argument fails, however, because Ulloa has not alleged that NGM

terminated him was for the late-report of the accident.  Rather, Ulloa has alleged that NGM terminated him was for the filing of the worker's compensation claim but that NGM *stated* that it terminated him for the late-report of the accident.  Accordingly, the Court will permit Ulloa to proceed with his claim of retaliatory discharge.

**CONCLUSION**

IT IS HEREBY **ORDERED** that Nevada Gold Mines, LLC's Motion to Dismiss (ECF No. 8) the original Complaint (ECF No. 1) is DENIED as moot.

IT IS FURTHER **ORDERED** that Juan Ulloa's Motion for Extension of Time (ECF No. 22) is GRANTED; Juan Ullo's Opposition (ECF No. 27) was timely filed.

IT IS FURTHER **ORDERED** that Nevada Gold Mines, LLC's Motion to Dismiss (ECF No. 17) the First Amended Complaint (ECF No. 25) is DENIED as to Count 3 and is GRANTED as to Counts 1, 2, 4, and 5, which Counts are DISMISSED without prejudice for failure to state a claim.

IT IS FURTHER **ORDERED** that Plaintiff shall have 30 days from the entry of this Order to file a Second Amended Complaint.  If Plaintiff fails to timely file a Second Amended Complaint stating a claim over which this Court has original jurisdiction, the Court will dismiss this matter without prejudice pursuant to 28 U.S.C. 1367(c)(3).

IT IS SO ORDERED.

Dated: July 26, 2022

_____
ROBERT C. JONES
United States District Judge

12